■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRADLEY WAGMAN, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Pincus, J.), rendered May 27, 1981, convicting him of manslaughter in the first degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial

ordered on the present indictment solely with respect to the count of criminal possession of a weapon in the second degree, and indictment otherwise dismissed without prejudice to the People to re-present any appropriate charges to another Grand Jury (see *People v Beslanovics,* 57 NY2d 726). Defendant's sole defense at trial was that of justification. Although he admitted shooting the decedent, there was conflicting testimony as to how the incident occurred. Defendant testified that the decedent and a group of decedent's friends attacked him, and that he feared for his life because of the group's violent reputation. Some of decedent's friends testified that the decedent had initially attacked defendant, but that defendant immediately drove away. They testified that defendant parked his car on a side street and, when the decedent was walking home along this street, defendant called to him and then shot him twice. The assistant medical examiner's testimony supported both versions of these events. Subdivision 2 of section 35.15 of the Penal Law provides that a person may use deadly physical force against another person when he reasonably believes that such person is using or about to use deadly physical force against him and he cannot with complete safety avoid it by retreating. When a defendant asserts a claim of justification, his state of mind is the crucial inquiry (*People v Miller,* 39 NY2d 543; *People v Desmond,* 93 AD2d 822). The jury must consider the defendant's subjective belief as to the imminence and gravity of danger and whether this subjective belief was reasonable (*People v Miller, supra; People v Desmond, supra*). The trial court's enunciation of the justification defense herein was, at best, confusing. Although the subjective test was initially stated, the court abruptly switched to an "ordinary reasonable person" standard stating: "You should place yourself in the shoes of the defendant and determine whether an ordinary reasonable person knowing the facts and circumstances and observing the acts and conduct of the decedent and certain members of the group as you found such facts and circumstances and conduct to be from the evidence, would you as an ordinary reasonable person be justified in reasonably believing that the victim or members of the group were using or about to use offensively deadly physical [*sic*] against him, and would you be justified in reasonably believing that the defensive deadly physical force was necessary to defend yourself if you were in the shoes of the defendant. If by applying such tests you determine that an ordinary reasonable man would be justified in so reasonably believing, then you should find te [*sic*] the defendant was justified in so reasonably believing". The court erred in enunciating an "ordinary reasonable person" standard for the evaluation of defendant's actions, rather than having the jury consider what defendant himself thought (see *People v Desmond, supra*). Although defense counsel did not object to this portion of the charge, its potential for harm warrants reversal in the interest of justice (see *People v Flores,* 75 AD2d 649; *People v Davis,* 74 AD2d 607; see, also, *People v La Susa,* 87 AD2d 578). Additionally, the prosecution impermissibly elicited information from defendant concerning confidential conversations with his attorney. Such questioning violates the attorney-client privilege and should not have been permitted (*People v Glenn,* 52 NY2d 880). The error was clearly prejudicial in that it bore strongly on the credibility of defendant's testimony, which was a key element in his defense. The prosecutor also contributed to the failure to provide a fair trial herein in his use of defendant's pretrial silence for impeachment purposes during summation. The prosecutor stated: "[K]eep in mind when viewing [defendant's] testimony as opposed to the other witnesses * * * that [the other witnesses] remained on the scene; that they didn't run any place. They waited for the police who came five minutes later * * * A statement taken, each one was then reinterviewed separately by an assistant district attorney and also a statement was taken from them. They didn't come to court and tell you their

story without having it told at least two times right after it happened". The court overruled defendant's objection and denied his motion for a mistrial premised on this statement. Although witnesses' credibility is certainly a proper subject for comment in summation, the use of a defendant's pretrial silence for impeachment purposes is proscribed (*People v Conyers,* 49 NY2d 174, on rearg 52 NY2d 454; *People v Pressley,* 93 AD2d 665). "A defendant is under no greater an obligation to incriminate himself by voluntarily contacting the police than he is by declining to make statements when confronted by law enforcement officials" (*People v Pressley, supra,* p 669). The prosecutor's statement clearly indicated that defendant was less worthy of belief because he maintained his silence until the trial. Defendant's objection should have been sustained, and corrective instructions given. Had the jury been properly instructed concerning the justification defense and had defendant's credibility not been impermissibly undermined, the result may well have been different. Accordingly, reversal is required. We have considered defendant's other contentions and find them to be without merit. Titone, J. P., Mangano, O'Connor and Brown, JJ., concur.