THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LINDA WILLIAMS, Appellant.

Fourth Department, December 19, 1986

APPEARANCES OF COUNSEL

*Diebold, Bermingham, Gorman, Brown & Cook (Mark Mahoney* of counsel), for appellant.

*Richard J. Arcara, District Attorney (Jo Faber* of counsel), for respondent.

### OPINION OF THE COURT

GREEN, J.

On the night of June 24, 1985, during an argument in her apartment, defendant fatally stabbed John Curry, her boyfriend. Defendant claimed she acted in self-defense. She was convicted of manslaughter in the second degree (Penal Law § 125.15 [1]). On appeal, defendant submits that a new trial is required due to the cumulative effect of various errors in the trial court's charge and the court's submission of a prejudicial verdict sheet to the jury. For the reasons which follow, we agree.

Defendant and John Curry had been friends for nearly seven years and lovers for two years prior to the stabbing. The relationship had been meaningful and rewarding until April 1985 when defendant returned home from a hospitalization for lupus disease. When she found her apartment in complete disarray and noticed that Curry had been drinking heavily, she told him to move out. Curry continued to visit, however, and in the two weeks prior to the stabbing, Curry, often drunk and belligerent, fought verbally and physically with the defendant and accused her of infidelity.

At approximately 6:00 P.M. on the night in question, Curry came into the bar where defendant worked. He appeared drunk. He had been there earlier that day to borrow money from the defendant, but she refused. Defendant finished work and left for home. When she arrived at her apartment Curry was waiting for her. He pushed her inside and called her some vulgar names. Defendant went into the bathroom and Curry followed. Curry choked defendant around her neck with both of his hands and slapped her in the face several times. Defendant managed to open the bathroom door and moved into the kitchen where Curry threatened to kill her at least five times.

As the two continued to struggle, Curry grabbed a large knife from the top of a washing machine with his right hand and maintained his chokehold on defendant with his left hand. Curry slapped defendant on her forehead with the flat side of the knife several times, scratched her neck while choking her and repeated his earlier threats that he would kill her. Defendant was able to wrest the knife away from Curry and stab him on the left side of the chest. Defendant testified she did not intend to kill Curry but only wanted to stop him from choking her.

Immediately following the struggle defendant, with the knife still in her hand, ran downstairs to summon help. When the police arrived defendant screamed "He jumped on me. He jumped on me, I stabbed him." One of the officers testified that he observed signs of a fight including strawberries strewn over the kitchen floor, chairs and a table tipped over, the top of the bathroom clothes hamper broken off, the bathroom rug rumpled, and a trail of blood in the kitchen. Another officer testified that defendant told him Curry had threatened her because she would not allow him to move back into her apartment. Defendant told another officer that Curry was the first one to grab the knife and that during the fight he yelled "Shut up, I'm going to kill you."

The court's charge on justification was confusing and inadequate. It consisted of recitations from portions of the Penal Law including the exceptions for withdrawal by the initial aggressor (Penal Law § 35.15 [1] [b]), for combat by agreement (Penal Law § 35.15 [1] [c]) and the duty to retreat, none of which defendant requested or was relevant. The court failed to charge the jury on the rules relating to circumstantial evidence, or on the relaxed standard for the justifiable use of deadly physical force by a homeowner against a burglar (Penal Law § 35.20 [3]) and the court made no effort to relate to the jury how the law of justification, based on defendant's subjective belief, might apply to the facts of this case (see, CPL 300.10 [2]).

The court prepared a verdict sheet which purported to summarize what the prosecution sought to prove under each charge but made no mention on the verdict sheet of the prosecutor's burden to disprove the justification defense as to each submitted count beyond a reasonable doubt.

After several hours of deliberation, the jury acquitted defendant of two counts of first degree manslaughter (Penal Law

§ 125.20 [1], [2]) and convicted her of one count of second degree manslaughter (Penal Law § 125.15 [1]). Defendant was sentenced to an indeterminate term of imprisonment of 4 to 12 years which was stayed pending appeal.

The trial court erred not only because it failed to charge what was required by law, but also because it included in its charge rules of law not supported by the evidence. First and foremost, the court should have charged the jury on circumstantial evidence. Since, other than defendant and Curry, there were no witnesses to the incident, there was no direct evidence of defendant's guilt other than defendant's statement that she stabbed the victim. This is an admission, but not a confession. The distinction is critical. "While a confession is an admission, an admission, even though it may contain inculpatory statements from which the jury may infer guilt, is not a confession unless it is a full and direct acknowledgement of *all* the elements of the crime" (Fisch, New York Evidence § 855, at 493 [2d ed]; emphasis added). Defendant's statement to the police and acquaintances that she stabbed John Curry was an admission only to the act but not the intent with which the act was done. Such an admission is only circumstantial evidence of guilt (Richardson, Evidence § 540 [Prince 10th ed]; *People v Bretagna,* 298 NY 323, 326, *cert denied* 336 US 919; *People v Sanchez,* 92 AD2d 595, *affd* 61 NY2d 1022). Since the evidence was entirely circumstantial as to the issue of intent, the trial court erred in refusing to instruct the jury to apply the more rigorous circumstantial evidence standard *(People v Burke,* 62 NY2d 860, 861). This error is particularly prejudicial where, as here, it is the defendant's own statements which constitute the circumstantial evidence *(see, People v Santos,* 90 AD2d 982).

The court also should have charged the jury on the justifiable use of deadly physical force by a victim of a burglary (Penal Law § 35.20 [3]). Viewing the evidence in the light most favorable to the defendant *(People v Torre,* 42 NY2d 1036, 1037; *People v Steele,* 26 NY2d 526, 529), the record reveals that John Curry forcibly entered and remained in defendant's apartment with intent to commit a crime, namely, an assault. At the time of the incident Curry did not reside in defendant's apartment. Defendant had asked Curry to leave several weeks before the incident, and according to defendant's testimony, she had asked Curry to leave many times on the night in question. Since the jury could have concluded that Curry's presence in defendant's apartment constituted a burglary, the

jury was entitled to know that under these circumstances defendant could use deadly physical force if she "reasonably believe[d] such to be necessary to prevent or terminate the commission or attempted commission of such burglary" (Penal Law § 35.20 [3]), even if the jury found that Curry did not use or threaten to use deadly physical force against the defendant.

The court also failed to charge the jury properly on the defense of justification. A justification defense contains both an objective and a subjective element. A jury must first determine whether a defendant reasonably believed deadly physical force was necessary to avert the imminent use of deadly physical force. If the People fail to prove beyond a reasonable doubt that defendant did not have such belief (subjective test), then the jury must also consider whether the belief was reasonable, i.e., could a reasonable person have had such belief under the circumstances presented (objective test) *(People v Goetz,* 68 NY2d 96, 115). Thus, the court's failure to fully define the meaning of reasonableness in terms of its subjective component deprived defendant of a fair trial *(People v Wagman,* 99 AD2d 519, 520).

Turning to the errors the court committed in the charge it did render, we note that in reading portions of the justification statute the court began, then stopped, then again started reading the law. This was done at least eight times. The result was a disjointed rendition of the justification defense which must have confused the jury. Moreover, the court made no meaningful effort to relate the law of justification to the facts of this case (CPL 300.10 [2]). In sum, the jury essentially was left to devise the law of self-defense solely from the court's halting recitation of the law, including some portions wholly irrelevant to the facts presented.

For example, the court should not have charged that defendant had a duty to retreat. There is no duty to retreat when a defendant is in her own dwelling and, pursuant to her theory of justification, she was not the initial aggressor *(People v Emick,* 103 AD2d 643, 661). Moreover, we note that the People did not maintain at trial that defendant had any duty to retreat. Indeed, such a claim would have been inconsistent with the People's theory that defendant was a "cold-blooded, heartless killer."

Finally, although some of the errors defendant raises on appeal were not properly preserved for review, in a case such as this where justification is the central issue to be decided,

such errors which deny defendant a fair trial are not harmless *(see, People v Vincenty,* 68 NY2d 899; *People v Townsend,* 67 NY2d 815; *People v Crimmins,* 36 NY2d 230, 238), and warrant a reversal and a new trial in the interest of justice *(see, People v Huntley,* 87 AD2d 488, 494, *affd* 59 NY2d 868; *People v Flores,* 75 AD2d 649; *People v Davis,* 74 AD2d 607; *People v Fuller,* 74 AD2d 879).

Accordingly, the judgment should be reversed and a new trial granted.

DOERR, J. P., BALIO, LAWTON and SCHNEPP, JJ., concur.

Judgment unanimously reversed, on the law, and as a matter of discretion in the interest of justice, and new trial granted.

# MEMORANDA

OF

*DECISIONS RENDERED DURING THE PERIOD EMBRACED IN THIS VOLUME*