**Eugene LOPEZ, Petitioner–Appellant,**

v.

**Dean R. RILEY, Superintendent, Greenhaven Correctional Facility, Respondent–Appellee.**

**No. 304, Docket 88–2305.**

United States Court of Appeals, Second Circuit.

Argued Nov. 4, 1988.

Decided Jan. 3, 1989.

Joel A. Brenner, East Northport, N.Y., for petitioner-appellant.

Mark Osnowitz, Asst. Dist. Atty., Queens County, N.Y. (John J. Santucci, Dist. Atty., Queens County, N.Y., of counsel), for respondent-appellee.

Before WINTER, MINER and ALTIMARI, Circuit Judges.

WINTER, Circuit Judge:

Eugene Lopez appeals from the denial of his petition for a writ of habeas corpus. The district court granted Lopez's application for a certificate of probable cause so that we might determine whether his claims regarding the sufficiency of the evidence before the state grand jury that indicted him, the use of misleading and prejudicial evidence in those grand jury proceedings, and the legal instructions given to that grand jury, may be raised in a habeas corpus proceeding under 28 U.S.C. § 2254 (1982). We hold that those claims may not be raised where a properly instructed petit jury heard all relevant evidence and convicted.

On May 19, 1982, Lopez shot one Edward Necci five times, fatally wounding him. After being shot, Necci managed to leave Lopez's home and make his way to a nearby pizzeria. Necci was discovered there by Antonio Guttierrez, an off-duty police officer acquainted with Lopez. Guttierrez thereafter approached Lopez and asked him if he knew of the shooting. Lopez replied that he did and stated, "[t]he guy tried to rip me off. He pulled a gun on me, we struggled, and I shot him." Subsequent questioning by another police officer elicited further information from Lopez, who again stated "[w]e argued. We fought. I shot him," and directed the officer to the murder weapon. The officer recovered the weapon and also found a jacket containing an awl or ice pick at the scene of the shooting. Later Marc McDermott, a friend of Lopez, told detective Bernard Smith that he had not witnessed the actual shooting. McDermott later testified before the grand jury and at trial, however, that he had witnessed critical moments in the shooting, and that Lopez had fired only after Necci lunged at him with a "silvery spike-like object." He also testified that he had overheard shouting concerning a "rip-off" before the shooting began.

Lopez was indicted by the grand jury for murder in the second degree and lesser charges stemming from the shooting. He moved to dismiss the indictment, alleging that: (i) the evidence presented to the grand jury was legally insufficient to disprove a defense of justification; (ii) the prosecutor did not sufficiently develop before, or adequately present to, the grand jury allegedly exculpatory evidence, particularly information concerning the awl or ice pick recovered at the scene; (iii) the prosecutor prejudiced the grand jury by including in the case caption an alias for appellant; and (iv) the instructions to the grand jury did not adequately address the law of justification. The Supreme Court, after inspecting the grand jury minutes, denied the motion.

A trial followed and resulted in a hung jury. Before retrial, appellant again moved to dismiss the indictment, this time alleging that the prosecutor had presented the grand jury with erroneous medical testimony to the effect that the victim had been shot in the back. The Supreme Court again examined the grand jury minutes and again denied the motion. After a second trial, a jury convicted Lopez of manslaughter.

Lopez's appeal from his conviction challenged the indictment and the conduct of the trial. His conviction was affirmed by the Appellate Division, which reported in detail its own examination of the grand jury minutes before rejecting the challenge to the indictment. *People v. Lopez*, 113 A.D.2d 475, 478–79, 497 N.Y.S.2d 32 (2d Dept.1985). Leave to appeal to the Court of Appeals was denied, *People v. Lopez*, 67 N.Y.2d 946, 494 N.E.2d 124, 502 N.Y.S.2d 1039 (1986), and a petition for a writ of habeas corpus followed, again alleging, *inter alia*, defects in the grand jury proceeding leading to his indictment.

In a memorandum opinion filed May 27, 1988, Judge Korman rejected Lopez's claims and dismissed the petition. In particular, Judge Korman, relying upon *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986), held that claims of deficiencies in a state grand jury proceeding cannot support a collateral attack under 28 U.S.C. § 2254. Subsequent to our decision in *Saldana v. New York*, 850 F.2d 117 (2d Cir.1988), however, he granted a certificate of probable cause so that we might determine whether *Saldana* allowed claims of deficiencies in grand jury proceedings to be raised in a habeas corpus proceeding. This appeal followed.

In *Saldana*, the petitioner challenged his indictment on the grounds that he was not permitted to testify before the state grand jury that indicted him. Because we held that the petitioner had neither exhausted his state remedies nor made any showing of prejudice, we did not reach the propriety of raising a challenge to state grand jury proceedings in a habeas corpus petition.

This appeal, by contrast, does put in issue whether the specified claims of deficiencies in the state grand jury proceedings are cognizable in a habeas corpus proceeding. In light of *Mechanik*,[1] we conclude they are not. *Mechanik* involved a violation, discovered only at trial, of Fed.R. Crim.P. 6(d),[2] involving the tandem testimony of two government agents before the grand jury. Reserving the question of what relief might be available if the violation of Rule 6(d) had been raised *before* trial, the Court held that the presence of unauthorized persons before the grand jury did not justify relief *after* the petit jury had rendered its verdict. "[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." 475 U.S. at 70, 106 S.Ct. at 942 (footnote omitted). The reasoning of *Mechanik* clearly applies here. If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court.

---

**1.** We need not address questions that have divided circuit courts considering the exact reach of *Mechanik* as applied to cases involving federal grand juries. *See, e.g., United States v. Midland Asphalt Corp.*, 840 F.2d 1040, 1044–46 (2d Cir.1988) (taking issue with *Mechanik* caselaw of Tenth, Ninth, and First Circuits). Nor shall we discuss appellant's non-grand-jury-related claims, all of which we have considered and found meritless.

**2.** Fed.R.Crim.P. 6(d) provides:

(d) *Who May Be Present.* Attorneys for the government, the witness under examination, interpreters when needed and, for the purpose of taking the evidence, a stenographer or operator of a recording device may be present while the grand jury is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting.

The particular claims of impropriety before the grand jury in this case concern the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence and error in explaining the law. Each of these alleged improprieties was cured in the trial before the petit jury, which convicted. Under *Mechanik*, therefore, error before the grand jury, if any, was harmless.

AFFIRMED.