■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN SIMMONS, Appellant. [615 NYS2d 56] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Patterson, J.), rendered December 22, 1992, convicting him of manslaughter in the first degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and the indictment is dismissed, without prejudice to the People to re-pre-

sent any appropriate charges to another Grand Jury *(see, People v Beslanovics,* 57 NY2d 726); and it is further,

Ordered that upon service upon him of a copy of this decision and order, with notice of entry, the official having custody of the defendant's person is directed to produce him, forthwith, before the Supreme Court, Kings County, at which time that court shall issue a securing order pursuant to CPL 470.45, either releasing the defendant on his own recognizance or fixing bail or committing him to the custody of the New York City Department of Correctional Services pending resubmission of the case to the Grand Jury and the Grand Jury's disposition thereof *(cf.,* CPL 210.45 [9]). Such securing order shall remain in effect until the first to occur of any of the following: (a) a statement to the court by the People that they do not intend to resubmit the case to a Grand Jury, (b) arraignment of the defendant upon an indictment filed as a result of resubmission of the case to a Grand Jury, (c) the filing with the court of a Grand Jury dismissal of the case following resubmission thereof, or (d) the expiration of a period of 45 days from the date of this decision and order, provided that such period may, for good cause shown, be extended by the Supreme Court, Kings County, to a designated subsequent date if such be necessary to accord the People a reasonable opportunity to resubmit the case to a Grand Jury.

On April 14, 1992, at approximately 3:30 P.M., the defendant was accosted by the decedent, Felix Martinez, who appeared drunk or "freaked out". The decedent demanded a sum of money and the defendant refused. The two men continued to exchange words as they entered the lobby of the defendant's apartment building. When it appeared that the argument was about to degenerate into a fight, the defendant said, "let's take it outside".

The decedent then exited the lobby, followed by the defendant. According to the chief prosecution witness, it was the defendant who then threw the first punch. Several punches were thrown and the two men ended up fighting on the ground.

According to the chief prosecution witness, the defendant eventually disengaged himself, the two men "finished fighting" and the defendant "walked around the corner". It was at this point, according to this witness, that the decedent began "digging in his pants". This witness testified that the defendant, upon seeing the decedent make this gesture, returned to

the scene of the fight, at which point the victim "pulled out the gun".

According to this eyewitness account, the defendant and the decedent then began "struggling over the gun". The witness continued, stating "that's when [the decedent] fell and he still had the gun. And that's when he started shooting the gun". The decedent shot the gun more than once, striking the defendant and causing him to "flinch". The struggle continued and the defendant eventually gained control of the gun when, according to this witness, he "shot [the decedent] back".

The account given by the People's main witness was not significantly contradicted by the testimony given by a second witness whose reliability was questionable in that he was a self-confessed alcoholic of 30 years and was admittedly not paying attention until after he heard the first shot. The defendant's own testimony was largely consistent with that of the People's main witness. He testified that the gunshot which killed the decedent went off as he tried to "snatch" the gun from the decedent, after having himself been shot in the neck.

In her summation to the jury in this case, the prosecutor argued, in effect, that the defendant could be considered criminally liable for murder because he failed to "walk away" at the time of his initial confrontation with the decedent in the lobby. The prosecutor argued: "[H]e followed the deceased out. He provoked this fight. He went after [the decedent]. He didn't walk away when he could have. This isn't self-defense". The prosecutor also described the defendant as the "initial aggressor".

The defendant was ultimately convicted of manslaughter in the first degree. For the following reasons we reverse the judgment of conviction and order a new trial.

Considering the particular facts of this case, including the fact that the decedent, using his own gun, evidently attempted to shoot the defendant prior to any attempt by the defendant to shoot the decedent, as well as the fact that the defendant suffered a non-fatal gunshot wound before the decedent suffered his fatal injury, and also considering the misleading nature of the prosecutor's summation, we agree with the defendant that the trial court's instructions to the jury with respect to the issue of justification should have been more carefully tailored to the evidence *(see,* Penal Law § 35.15; CPL 300.10 [2]; *see also, People v Primus,* 178 AD2d 565; *People v Ward,* 162 AD2d 566, 567; *People v Emmick,* 136 AD2d 892, 894; *People v Williams,* 121 AD2d 145, 149). In its supplemen-

tal charge, the court should have repeated its instruction that in order to establish the defendant's guilt, the People had the burden of proving beyond a reasonable doubt that the defendant knew he could have retreated in complete safety himself. Also, it should have been clarified that the People's burden on this score related to that point in time when, according to the evidence, the defendant actually exerted deadly physical force against the decedent *(see,* Penal Law § 35.15 [2] [a]; *People v Lopez,* 200 AD2d 767; *People v Comfort,* 113 AD2d 420, 427; *People v La Susa,* 87 AD2d 578; *see also,* 1 CJI[NY] 35.15 [2] [a], at 864).

In this case, the prosecutor's remarks may have caused the jurors to believe that the defendant was deprived of a justification defense merely because he failed to "walk away" at the time the decedent first accosted him. The prosecution's own evidence shows, however, that the defendant *did* attempt "to walk away" prior to the time when the decedent reached into his pants for a gun. The jury could have concluded that the defendant had effectively communicated his withdrawal from his fight with the decedent prior to the decedent's act of reaching for his weapon. It was thus irrelevant that the defendant might have been able to walk away at the time of the initial encounter and similarly irrelevant that the defendant might have been considered the "initial aggressor" in connection with the fistfight *(see,* Penal Law § 35.15 [1] [b]; *see also, People v Filippelli,* 173 NY 509; *see also, People v Ross,* 197 AD2d 713; *People v Porter,* 177 AD2d 1001; *People v Casado,* 177 AD2d 497; *People v Walker,* 168 AD2d 983; *People v Rattley,* 148 AD2d 642; *People v Pagnotta,* 144 App Div 265). The trial court acknowledged as much when it decided, correctly in our view, to omit from its charge any instruction as to the limited availability of the justification defense to an "initial aggressor" (Penal Law § 35.15 [1] [b]).

In sum, under the particular facts of this case, we believe the trial court should have clarified for the jury that the defendant had no "duty to retreat" (Penal Law § 35.15 [2] [a]) at the time of the initial confrontation in the lobby. The defendant's request to charge in this respect should have been granted. The court's supplemental charge should have contained an express statement, that in order to gain a conviction, the People had the burden of proving beyond a reasonable doubt that, at the time the defendant exerted deadly physical force, he knew he could have retreated in complete safety to himself. For these reasons, a new trial is warranted.

We conclude that the evidence was factually and legally

sufficient to establish the defendant's guilt and to support the jury's verdict.

Because the defendant was convicted of a crime submitted as a lesser included offense and acquitted of the sole charge contained in the indictment, the appropriate remedy is to dismiss the indictment with leave to the People to represent the charges to another Grand Jury if they be so advised (see, *People v Beslanovics*, 57 NY2d 726, *supra)*.

We need not pass on the defendant's remaining contention. Bracken, J. P., O'Brien, Santucci and Joy, JJ., concur.