## COURT OF APPEALS,
### March 21, 1911.

# THE PEOPLE OF THE STATE OF NEW YORK, v. JOHN C. LUMSDEN.

### (201 N. Y. 264.)

MURDER—TRIAL—ERRONEOUS CHARGE AS TO LAW OF SELF-DEFENSE.

Upon the trial of a defendant convicted of manslaughter, for the shooting of the deceased in a struggle following a quarrel between them, in which it was claimed on the part of defendant that he fired in self-defense and on the part of the prosecution that the deceased did not attack the defendant, as claimed by him, but was acting in self-defense, it is error for the trial court, after correctly stating the law of self-defense applicable to the case, to charge at the request of the district attorney that, if the deceased believed the defendant was armed with a deadly weapon and that the deceased was in great danger therefrom, then the deceased was justified in seeking to protect himself and in disarming the defendant, and if the deceased was so doing defendant was not justified in shooting him while doing it.

People v. Lumsden, 141 App. Div. 158, reversed. See ante 219.

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 2, 1910, which affirmed a judgment of the Court of General Sessions of the Peace in the county of New York rendered upon a verdict convicting defendant of the crime of manslaughter in the first degree.

The facts, so far as material, are stated in the opinion.

*Martin W. Littleton* and *Owen N. Brown* for appellant. The court erred in its charge to the jury on the subject of the presumption of innocence. (*Coffin* v. *United States,* 156 U. S. 432; *Seybolt* v. *R. R. Co.,* 95 N. Y. 562; *United States* v.

*Shapleigh,* 54 Fed. Rep. 126; *State* v. *Tibbetts,* 35 Me. 81; *Territory* v. *Baca,* 11 N. Mex. 559; *People* v. *Fitzgerald,* 138 Cal. 139; *People* v. *Van Houten,* 38 Hun, 168; *Wallace* v. *State,* 9 Tex. App. 299; *Davis* v. *United States,* 160 U. S. 487; *Allen* v. *United States,* 164 U. S. 500.) The error in the court's charge on the presumption of innocence was not qualified or cured by the special charges given at defendant's request. (*Rommeny* v. *N. Y.,* 49 App. Div. 64; *People* v. *Taylor,* 92 App. Div. 29; *People* v. *Levalie,* 6 App. Div. 230; *Mills* v. *United States,* 164 U. S. 644.) The court erred in charging the jury "that if Harry B. Suydam believed the defendant was armed with a deadly weapon, and that he, Suydam, was in great danger therefrom, then Suydam was justified in seeking to protect himself and in disarming the defendant, and if Suydam was so doing, defendant was not justified in shooting him while doing it." (*People* v. *Levalie,* 6 App. Div. 230.)

*Charles S. Whitman, District Attorney* (*Robert C. Taylor* of counsel), for respondent. The claim that the court erred in its charge as to the presumption of innocence is not sustainable. (*People* v. *Sherlock,* 166 N. Y. 180; *People* v. *Martell,* 138 N. Y. 595; *People* v. *Rodawald,* 177 N. Y. 408; *People* v. *Johnson,* 185 N. Y. 219; *People* v. *Guidici,* 100 N. Y. 503; *People* v. *Benham,* 160 N. Y. 402; *People* v. *O'Brien,* 135 App. Div. 85.) The trial court committed no error in charging "that if Harry B. Suydam believed the defendant was armed with a deadly weapon and that he, Suydam, was in great danger therefrom, then Suydam was justified in seeking to protect himself and in disarming the defendant, and if Suydam was so doing defendant was not justified in shooting him while doing it." (*People* v. *Dankburg,* 91 App. Div. 67; *People* v. *Dumar,* 107 N. Y. 13; *People* v. *Hall,* 169 N. Y. 184; *People* v. *Patrick,* 182 N. Y. 131; *People* v. *Wenzel,* 189 N. Y. 275.)

HISCOCK, J.   Appellant was indicted for the alleged crime of murder in the first degree because in the city of New York on the 19th day of December, 1908, he shot and killed one Suydam.   He was convicted of manslaughter in the first degree, but at the instigation of the assistant district attorney the trial judge committed such errors that the judgment must be reversed and another attempt made properly to pass upon the rights of the defendant.

While the judgment of conviction has been unanimously affirmed and a review of the merits thereby precluded, it is necessary to recapitulate some of the important facts for the purpose of intelligently discussing the errors which necessitate a reversal.

The appellant invented something and he and the deceased and one Jacobs came into relationship for the purpose of organizing a company to promote and market his invention.   The appellant became dissatisfied with the treatment received by him from the others and threatened recourse to various remedies with the result as claimed by him that various threats were made against him by both Jacobs and Suydam conditioned on his so seeking redress against them.   On the morning of the homicide he went to the office of deceased and called him into the hall where they had some conversation.   The only version of what there occurred is given by the appellant who says that amongst other things Suydam called his attention to and thus in effect reiterated his prior threat.   They shortly returned to the office and after a few moments during which, so far as I am able to discover, there were no apparent present signs of an altercation, a struggle was precipitated in the course of which the homicide was committed.   Concededly the appellant had a pistol in his pocket but he and the witnesses for the People differ as to the commencement of the affray.   The latter testify that suddenly the deceased called to another person in the office, "For God's sake help me, George, he is going to shoot.   Get

that gun," and that thereupon the deceased and this witness attacked the appellant for the purpose of getting away the pistol and protecting the deceased. The version of the appellant is that he had his revolver for purposes of self-protection because of the threats which had been made against him, and that without any preliminary warning or provocation the deceased struck him on the head and grabbed him around the body and shouted to the other person to grab him and get his pistol, and that this other person did strike him on the head and otherwise violently attack him and that in the course of the struggle, presumably on his theory for the purposes of self-defense, his pistol was drawn and the deceased was shot.

It will be seen from this brief review of the facts that at the trial the claim was made on behalf of each of the principal actors in the tragedy that he was acting in self-defense and that the conduct of the other was unjustifiable. The appellant especially testifies and claims that he had done nothing whatever to warrant the attack which was made on him and in fact that until after the attack was commenced nothing was said by the deceased or his companion to indicate their alleged purpose of self-defense. Under these circumstances it was manifestly important that the court should properly and clearly define the appellant's rights of self-protection in case the jury should feel inclined to accept his version of the affray. Originally in the main charge it did this in a fairly satisfactory manner.

After stating the law applicable to various situations, not in any degree presented by the evidence in this case, the judge finally charged: " Homicide is also justifiable when committed in the lawful defense of the slayer  *  *  *  when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony, or to do some great personal injury to the slayer,  *  *  *  and there is imminent danger of such design being accomplished. Under the provisions of the statute, in case a person makes an assault or attack upon an-

other under such circumstances as would lead a reasonable man to believe that he is about to kill or to do great bodily injury, and there is imminent danger of his doing so, then the person attacked has a right to kill and if under such circumstances he did kill it would be justifiable in law." In response to a request he also charged correctly and fairly what were the rights of self-defense belonging to the appellant in case the jury should adopt his view of the circumstances leading up to and attending the homicide.

Unfortunately, however, after all this had been done there was crowded upon the trial judge by the assistant district attorney and he charged the following request:

"Mr. Nott: I ask your Honor to charge that if Henry B. Suydam believed the defendant was armed with a deadly weapon and that he, Suydam, was in great danger therefrom, then Suydam was justified in seeking to protect himself and in disarming the defendant, and if Suydam was so doing defendant was not justified in shooting him while doing it."

The errors in this charge are serious and I shall call attention to some if not all of them. If the facts were found as stated the right was denied to appellant to shoot in self-defense, on the theory that Suydam was only doing for his own protection what he had a right to, and, therefore, might not lawfully be resisted. But when we examine the premises in this charge, we see that they utterly fail to support the final deduction, and that the rules laid down in support of Suydam's conduct scarcely approximated and much less attained correctness.

In the first place the only basis which the jury were required to find as a justification for the action of the deceased in attacking appellant was his simple "belief" that the latter was armed and that he was in great danger. There was no suggestion of any qualification that this belief must have rested upon some reasonable ground, but as charged it was a sufficient basis for the action of the deceased even though a creation of

mere fear or fancy or remote hearsay information or a delusion pure and simple and not rationally supported by any action or conduct of the appellant. Of course a belief so developed or acquired would not satisfy the requirements of a justification for the conduct of the deceased.

In the second place the jury in effect were told that if the deceased was possessed of such belief, arising no matter how, he was justified in seeking to protect himself and to disarm the appellant, no limitation being placed on the force which might be used for that purpose. Again it is obvious that this is not the correct rule, but that even if deceased was protected by a justified and reasonable belief that appellant was armed and liable to attack and injure him, he was limited to the use of such force as might be reasonably necessary, and could not indulge in wanton violence for alleged purposes of protection and disarmament. (Penal Code, section 26; *Ruloff* v. *People,* 45 N. Y. 213; *People* v. *Dankberg,* 91 App. Div. 67, 71; *People* v. *Constantino,* 153 N. Y. 24, 12 N. Y. Crim. 339.) Thus the jury in effect were instructed that no matter how unfounded and deluded the belief of the deceased and no matter how excessive might be the violence generated by that belief " defendant was not justified in shooting." That is, all that had been earlier said concerning the right of the appellant to defend himself was swept away, and he was required to submit to any measure of violence provided only the jury should find a certain mental condition on the part of the one who on appellant's theory attacked him first.

These were the last words spoken on this subject and I do not feel that we can safely say that the jury in their minds laid them beside what had earlier been spoken and from the two lines of instruction evolved a correct conception of the law which governed the rights of the deceased and his slayer accordingly as the facts should be found. But rather it seems that the final words must have given a predominant trend to

their thoughts and have led them to enter upon their deliberations with a false test. Whatever the merits of the prosecution this was an infringement on the rights of the accused.

Serious complaint is made of other alleged errors committed by the trial judge in passing on the subjects of the presumption of innocence in behalf of the appellant and the consideration to be given to evidence of his prior good character. It is true that the trial judge by failing to charge plainly and concisely the rules governing these subjects and by indulging in various digressions did incur unnecessary risks of legal error. We think, however, that in the end he perhaps protected the rights of the appellant and in any event inasmuch as a new trial must be had whereon these questions doubtless will be avoided, it is deemed unnecessary to consider them at length.

The judgment must be reversed and a new trial granted.

GRAY, J. (dissenting). I vote for the affirmance of this judgment and I consider the ground, upon which the reversal of the judgment is placed, to be altogether too technical. The trial judge, in his main charge, had instructed the jurors upon the law, correctly, and at such length and with such fairness to the defendant, that they could not have been misled by his ruling upon the request in question. While the request was unnecessary, whatever the error in granting it, it was, in view of the evidence and of what had preceded in the charge, one that we should not regard as prejudicial.

CULLEN, Ch. J., WERNER, WILLARD BARTLETT, CHASE and COLLIN, JJ., concur with HISCOCK, J.; GRAY, J., reads dissenting memorandum.

Judgment of conviction reversed, etc.