THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v BERN-
HARD GOETZ, Respondent.

First Department, April 17, 1986

**APPEARANCES OF COUNSEL**

*Robert M. Pitler* of counsel *(Mark Dwyer* and *Gregory L. Waples* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for appellant.

*Mark M. Baker* of counsel *(Barry Ivan Slotnick* and *Michael Shapiro* with him on the brief; *Slotnick & Cutler, P. C.,* attorneys), for respondent.

**OPINION OF THE COURT**

KASSAL, J.

We agree with the thoughtful and incisive analysis of the issues by Trial Term and affirm to the extent appealed from, essentially for the reasons stated by Justice Crane (131 Misc 2d 1). However, in view of the importance of the issue, we would add the following:

I

This appeal poses a critical legal issue in a most significant criminal case—the proper legal standard to be employed in determining the defense of self-defense or justification in connection with the use of deadly physical force to repel a robbery and/or in response to the claimed threatened use of deadly physical force. The Justice at Trial Term dismissed nine counts of the indictment because of fundamental error by the prosecutor in his instructions to the Grand Jury, which, the court found to be so serious and prejudicial as to significantly impinge upon the integrity of the Grand Jury proceeding. Trial Term, however, did grant leave to the District Attorney to re-present the charges to another Grand Jury. As a result, this appeal, on legal issues only, is not concerned with the underlying merits of any of the criminal charges, neither those dismissed by Justice Crane, which may be presented to another Grand Jury since leave to resubmit was granted, nor those charges not dismissed, which await trial.

Piercing the maze of confusion, the rhetoric and media sensationalism and the heat that have all surrounded this case, it is crucial to focus upon the limited question before us on this appeal. The sole issue is the propriety of the instructions by the Assistant District Attorney to the Grand Jury on justification. The charge basically employed an objective test, significantly different from the instructions given by another Assistant District Attorney to the first Grand Jury in this matter.

The Grand Jury instructions presented here were in direct conflict with the subjective standard explicitly required by Penal Law § 35.15—"he reasonably believes"—and in contravention of a long line of appellate decisions on the issue. In this Department, 7 of the 14 present members of this court have recently approved this subjective standard (see, People v Montanez, — AD2d —; People v Santiago, 110 AD2d 569). In the Second Department, 10 of the 15 members of that Bench came to the same conclusion (see, People v Powell, 112 AD2d 450; People v Swinson, 111 AD2d 275, 277 [Titone, J., concurring in part]; People v Long, 104 AD2d 902; People v Wagman, 99 AD2d 519; People v Desmond, 93 AD2d 822).

These decisions uniformly hold that the critical inquiry under New York's justification statute is governed by a subjective standard, namely, whether the defendant reasonably believed the use of physical force or deadly physical force to be necessary under the circumstances, not the objective test espoused by the District Attorney and the dissent—whether a reasonably prudent man would have had that belief in that situation. In our view, the use of the objective standard improperly shifts the focus of attention from the subjective state of mind of this defendant, necessary to determine his mental state in terms of culpability and, in evaluating his moral culpability, substitutes the criterion of a fictitious, hypothetical person—the reasonable man—thereby using civil negligence concepts, in sharp contrast to the Penal Law definition of this defense.

Contrary to statements made at oral argument and in the District Attorney's brief, our prior holdings were not made in a "jurisprudential vacuum", but were carefully researched, considered and determined. There is no basis for the highly unusual, unfounded and incorrect assertion that this court rendered decisions without considering the prior law. Appellant and our dissenting colleagues overlook the fact that within the last few months, still fresh in mind, this precise issue had been raised and rejected in Santiago and in Montanez (supra) only after a thorough evaluation of the legal concepts, which had been fully presented in the briefs and at oral argument.

Justice Asch suggests that, when Santiago and Montanez (supra) were decided, we were not aware of and did not "discuss" the prior decisions of the Court of Appeals. To the contrary, Santiago expressly relied, in part, upon the Second Department memorandum decision in Wagman (supra), which

followed that court's earlier decision in *Desmond (supra)*. *Desmond* had been based upon, *inter alia*, several earlier authorities—*People v Lumsden* (201 NY 264), *People v Governale* (193 NY 581) and *People v Taylor* (177 NY 237). As a matter of fact, this last case, *Taylor*, has not been addressed, either by the District Attorney or the dissent. Moreover, in *People v Gonzalez* (80 AD2d 543), the District Attorney had conceded that the trial court erred in instructing the jury on the defense of justification by utilizing "the ordinary prudent man" standard. In any event, the suggestion that our prior decision in *Santiago* is "fatally flawed", and that those of the Second Department are "highly suspect" because they did not include citations of a greater number of decisions on the issue is as novel as it is wrong.

We approach the disposition of this case with a keen awareness of society's overriding concern that justice be done, but only in adherence with due process of law. The fundamental fairness, on which our system of justice is based, is designed to protect the individual rights of those accused as well as the interests of society. This mandates that presentment to a Grand Jury be done by way of adequate and proper legal instructions, without which, the Grand Jury—historically, the heart of our criminal justice system—must falter. As Trial Term aptly observed: "This case for all concerned, including defendant, cries out for adjudication, not according to popular opinions, emotional reactions or political philosophy, but according to the evidence, properly and fairly admitted before the appropriate tribunal, and adjudicated in obeisance to the rules of law. Indeed, observance of rules of law is what makes our society stable; adoption and enforcement of these rules pursuant to our constitutions is what keeps us free."

II

In the early afternoon hours of December 22, 1984, newspapers throughout the Nation carried sensational headlines that four youths had been shot by a man who appeared to have been victimized on a downtown IRT subway train and who, after the shooting, fled the scene onto the tracks and into a nearby subway tunnel. On December 31, 1984, nine days later, Bernhard Goetz voluntarily surrendered to the police in Concord, New Hampshire, identifying himself as the wanted subway gunman. After *Miranda* warnings had been given, in a lengthy, recorded interview, he explained his background in

terms of his two earlier experiences as a robbery victim and described his perceptions at the time of this subway confrontation, which he claims motivated and prompted his extraordinary response. He waived extradition and was returned to New York for arraignment.

The first Grand Jury proceeding, at which neither the defendant nor any of the youths testified, returned an indictment charging defendant with criminal possession of a weapon in the third and fourth degrees but did not return a true bill on the other charges of attempted murder, assault and reckless endangerment. On March 12, 1985, the court granted the prosecutor's application, pursuant to CPL 190.75 (3) for leave to resubmit the case to a second Grand Jury, at which two of the alleged "victims" testified. Following this, defendant was indicted for attempted murder, assault, reckless endangerment and criminal possession of a weapon in the second degree. At his arraignment on the second indictment, both indictments were consolidated.

This appeal is from an order granting defendant's omnibus motion to dismiss nine counts in the second indictment based upon claimed erroneous instructions given to the Grand Jury on the critical defense of justification. In charging the Grand Jury on self-defense under Penal Law § 35.15, the prosecutor, in essence, initially told the grand jurors that, under the statute, a person may use deadly physical force, (1) when *he reasonably believes* that the other person is using or about to use deadly physical force but that he is not justified in doing so "if he knows that he can with complete safety as to himself or others avoid the necessity of so doing by retreating" or (2) when *he reasonably believes* that the other person is committing or attempting to commit a robbery, in which case there is no duty of retreat. At the end of the charge, one of the grand jurors, still obviously unclear as to the full import of the instruction, sagely inquired as to the meaning of the word "reasonably" *in terms of assessing defendant's belief* on the issue of justification: "You use the term reasonably with regard to the state of mind of the defendant. Are we to be concerned with psychiatric statement *[sic]* or whether we feel this was an insane act or irrational? You say if he believes in his mind that what he was doing". At this point, the prosecutor interrupted him and offered the following supplemental instruction by way of clarification as to the key element of this defense:

"Okay. I will reemphasize three elements of the defense of justification.

"The first element is that he must in fact believe in his own mind that he was in a situation which he feared that deadly physical force was about to be applied against him.

"The second element is that his response, assuming that he did actually so believe his response, was his response reasonable under the circumstances and *in determining whether it was reasonable under the circumstances you should consider whether the defendant's conduct was that of a reasonable man in the defendant's situation.*

*"So, there's both a subjective and objective element to this.* First of all, you have to determine whether the defendant, in his own mind, believed he was in the kind of peril that permitted him to use deadly physical force. You must also then determine whether his response was reasonable under the circumstances, *whether that was the action—the response was the action that he—that a reasonable man who found himself in the defendant's situation* and if it was unreasonably excessive or—or otherwise unjustifiable it—then the defense would not be made out and the third element is the question of retreat" (emphasis added).

### III

We agree with Trial Term that this instruction, equating the defendant's reasonable belief with that of the hypothetical, ordinary prudent man was error since it improperly substituted an objective standard for the subjective test required by Penal Law § 35.15.

Under the self-defense statute, the crucial factors are the defendant's subjective belief that the use of physical force or deadly physical force was necessary under the circumstances and whether that belief was reasonable *to him,* not whether a reasonable prudent man would share the belief. On that basis, as stated, it has been repeatedly and recently held, both in the First and Second Departments, that an instruction which substitutes an objective for the subjective standard is improper and constitutes reversible error *(see, People v Montanez, supra; People v Santiago, supra; People v Powell, supra; People v Long, supra; People v Wagman, supra; People v Desmond, supra).* The precise issue here was specifically and fully presented in each of those cases and was carefully considered. To the extent that the Appellate Division, Fourth

Department, held otherwise in *People v Comfort* (113 AD2d 420), its decision, which we decline to follow, is contrary to the established authority in this Department.

The imperative inquiries as to justification are the defendant's state of mind, in terms of his subjective belief as to the imminence and gravity of danger and, if so, whether that belief was reasonable to him under the circumstances. The dissent has misconstrued the holding in each of these cases as eliminating the statutory standard of reasonableness from the jury's consideration. To the contrary, we have never held that it is unnecessary to consider the reasonableness of defendant's subjective belief that he was about to be attacked and that the use of physical force to defend himself was necessary. However, this does not authorize resort to a standard based upon the abstract, ordinary prudent person. In a criminal prosecution, such an instruction to a Grand Jury or to a petit jury equating reasonableness with the belief or action of the reasonable man, improperly shifts the focus of attention from the state of mind and mental culpability of the defendant, critical for the *mens rea* required for criminal responsibility, to the moral culpability of the fictitious, ordinary prudent man *(see,* Singer, *The Goetz Case Revives Issue of Self-Defense Standards,* NYLJ, Feb. 18, 1986, p 1, cols 3, 4). This is improper and only serves to distract the jury from its assigned role in evaluating the mental culpability of the defendant.

The instruction to the second Grand Jury did not conform to the pattern criminal jury instructions on the issue of justification, adopted by the Committee on Criminal Jury Instructions of the State of New York, authorized and published by the New York State Office of Court Administration and, in adopting an objective test, was in direct conflict with it. The pattern charge is based upon the statute and reported decisions. In 1 CJI (NY) 35.15 (2) (a) pp 874-875, entitled "Defensive Use of Deadly Physical Force", the following jury charge is presented for self-defense and unmistakably imposes a subjective standard:

"As I stated earlier, a defendant may use in his own defense deadly physical force capable of causing death when: (1) The defendant 'reasonably believes' that the victim is using, or is about to use, offensively deadly physical force against him, and (2) the defendant 'reasonably believes' that the use of defensive deadly physical force is necessary to prevent the attack upon him by the victim.

" 'Reasonably believes' is the test. If the defendant was justified in 'reasonably believing' *it does not matter if in fact he was mistaken in his belief* [emphasis added] * * *

"The test the law requires you to use in deciding what this defendant was reasonably justified in believing is what *this defendant himself, subjectively, had reason to believe—not what some other person might reasonably believe.* You should place yourselves figuratively in the shoes of this defendant and, based on all the circumstances surrounding the encounter, as these, then and there, appeared to *this* defendant * * * you should decide whether or not this defendant in fact reasonably believed that the victim was about to use offensive deadly physical force against him, and that defensive deadly physical force was necessary to defend himself" (emphasis in original and added).

The same subjective standard is approved and repeated in each of the several recommended criminal jury instructions on self-defense *(see,* 1 CJI [NY] 35.15 [1]; 35.15 [2] [a]; 35.15 [2] [b]; 35.15 [2] [c]; 35.20 [1], [2]; 35.25, 35.30). The CJI Committee's comments and explanatory notes, which precede the pattern instructions, clearly state that the statutory standard is based upon the subjective belief of the defendant and not that of a reasonable or prudent person: "The statute, as well as the cases, makes it clear that the 'reasonable belief' is *the subjective belief of the particular defendant,* and *not the 'belief' of the standard 'reasonable' or prudent person"* (1 CJI [NY] 35.00 p 848; emphasis added).

The fatal flaw in the position of our dissenting colleagues is the assumption that "reasonably" in Penal Law § 35.15 cannot be defined without inquiry as to what a reasonably prudent man would have believed or done in the same situation. While we recognize that the element of reasonableness of both defendant's belief and his reaction is included in the statutory standard, the statute unquestionably establishes a subjective test which focuses upon the defendant, not a hypothetical third person. It is improper to resort to negligence principles which only serve to mislead the trier of the facts in its critical function of assessing guilt.

Thus, on the issue of self-defense, the jury should be instructed to examine the circumstances from the defendant's viewpoint and, considering his background, including his physical and mental condition, his knowledge and prior experiences, to determine whether the defendant, in the situation in

which he found himself, honestly and in good faith was justified in believing himself to be in imminent danger from deadly physical force from which he could not retreat in complete safety or, did he justifiably believe that the other person was committing or attempting to commit a robbery and was the degree of force used by him proper in the circumstances? Alternatively, was it in excess of that reasonably necessary for his own defense? The jury should be instructed to consider the subjective circumstances in which this defendant found himself and the situation as he then perceived it to be, no matter how inaccurate that perception may have been and, in that context and viewpoint, determine whether his belief and response were justified. In considering the issue, the jury must be instructed that the operative test and standard required by the statute is whether "this defendant *himself, subjectively,* had reason to believe—not what some other person might reasonably believe" (1 CJI [NY] 35.15 [2] [a] p 875).

In substance, this was the instruction given by the Assistant District Attorney to the first Grand Jury ("whether he had a right to believe, reasonably, under the circumstances"), but which was not followed by a different Assistant District Attorney in the second Grand Jury proceeding. Instead, the prosecutor instructed the second Grand Jury to determine the reasonableness of defendant's belief and his reaction by measuring it against the standard of an ordinary reasonable man and whether an ordinary prudent person would have believed himself to be in danger and would have reacted as defendant did. As stated, this was in direct conflict with the recommended pattern criminal jury instruction and the recent cases in this Department, as well as the Second Department, by what Justice (now Associate Judge of the Court of Appeals) Titone referred to as "[a]n unbroken line of authority" *(People v Swinson,* 111 AD2d, at p 278).

We find no rationale or any other basis to depart from our prior holdings that the instruction employing the reasonable prudent man standard is error. While Justice Asch refers to the "doubts" expressed by Justice Sandler in his concurring memorandum in our recent holding in *People v Montanez (— AD2d —, supra)* issued after publication of Trial Term's decision in this case, it is noteworthy that, notwithstanding the doubt expressed, Justice Sandler did concur in the result in that case, wherein we held this to be prejudicial error,

which "violated the defendant's fundamental right to a fair trial" *(supra,* p —).

Both the District Attorney and the dissent strongly stress the uncontroverted holding of the Court of Appeals that "a Grand Jury need not be instructed with the same degree of precision that is required when a petit jury is instructed on the law." *(People v Calbud, Inc.,* 49 NY2d 389, 394.) The court, in that case, recognized that "it would be unsound to measure the adequacy of the legal instructions given to the Grand Jury by the same standards that are utilized in assessing a trial court's instructions to a petit jury" *(supra,* p 394). Nevertheless, the Court of Appeals, at the same time, in very clear and strong language, cautioned that this does not authorize erroneous or misleading instructions, especially in response to a request from the Grand Jury for clarification or amplification of a particular phrase *(supra,* at p 395, n 2). This rule is particularly applicable here, where the prosecutor, in responding to a specific inquiry from a grand juror on this very point, "clarified" self-defense by substituting the objective standard for the statutory subjective test.

Plainly, the prosecutor's charge to the second Grand Jury did not conform to the statutory subjective test. Nor did it satisfy the objective standard because the Assistant District Attorney did not include an instruction to take into consideration defendant's background, his physical attributes and mental condition, knowledge and prior experiences. These are all necessary for the jury to determine the reasonableness *to the defendant* of his belief and his reaction. Instead, the only instruction given to the second Grand Jury was to determine the reasonableness of defendant's conduct in relation to whether his response was that of "a reasonable man who found himself in the defendant's situation" at the time. The words "defendant's situation" clearly referred to the *physical predicament* in which the defendant found himself at that point in time, reacting to a confrontation on the subway train, unrelated to his own background, knowledge and prior experiences. This was a fatal omission, even under the objective standard advocated by appellant and adopted by the dissent. Contrary to Justice Wallach's conclusion, the instruction was not a "fair" summary as to self-defense but instead, was incomplete and inadequate in material respects.

## IV

In advancing a subjective-objective standard, the dissent

relies upon a host of early Court of Appeals opinions which had considered and decided the defense of justification on the basis of the then statute, which significantly and materially differed from the current provisions in Penal Law § 35.15. Our colleagues have not dealt with the fact that the prior New York statute had an entirely different standard, requiring objective "reasonable ground" that the person was in danger of inevitable and irreparable personal injury.

Thus, until the critical year of 1965, when the Penal Law was revised (L 1965, chs 1030, 1039, eff Sept. 1, 1967), the justification defense had been presented in three separate sections of the Penal Law, which remained essentially unchanged from 1829 through subsequent revisions, in 1881 (L 1881, ch 676) and 1909 (L 1909, ch 88). Self-defense as a defense in criminal cases was provided for in Penal Law §§ 42, 246 and 1055.

Section 42, entitled "Rule when act done in defense of self or another", provided: "An act, otherwise criminal, is justifiable when it is done to protect the person committing it, or another whom he is bound to protect, from inevitable and irreparable personal injury, and the injury could only be prevented by the act, nothing more being done than is necessary to prevent the injury."

Former Penal Law § 246, entitled "Use of force not unlawful in certain cases", provided:

"To use or attempt, or offer to use, force or violence upon or towards the person of another is not unlawful in the following cases * * *

"3. When committed either by the party about to be injured or by another person in his aid or defense, in preventing or attempting to prevent an offense against his person * * * if the force or violence used is *not more than sufficient to prevent such offense*" (emphasis added).

As to the defense of justification in homicide cases, section 1055, entitled "Justifiable homicide", provided in part:

"Homicide is also justifiable when committed:

"1. In the lawful defense of the slayer * * * or of any other person in his presence or company, when there is *reasonable ground to apprehend a design* on the part of the person slain to commit a felony, or to do some great personal injury to the slayer, or to any such person, and there is imminent danger of such design being accomplished" (emphasis added).

## V

While each of the former statutory provisions established what appears to be an objective standard, many of the earlier cases in this State, nevertheless, recognized the inherent subjective nature of the defense of justification. Thus, in *Shorter v People* (2 NY 193, 199), the Court of Appeals observed: " '[I]t is not essential that an actual felony should be about to be committed in order to justify the killing. If the circumstances are such as that, after all reasonable caution, *the party suspects* that the felony is about to be immediately committed, *he will be justified*' " (emphasis added). However, inasmuch as the court had before it a justification statute which required the jury to consider "reasonable ground" for apprehension and danger, it observed (at p 201):

"It is not enough that the party believed himself in danger, unless the facts and circumstances were such that the jury can say he had reasonable grounds for his belief * * *

"As I read the statute, it affirms the rule of the common law. The words are, homicide in self-defense is justifiable 'when there shall be *a reasonable ground to apprehend* a design to commit a felony, or to do some great personal injury, and there shall be *imminent danger* of such design being accomplished.' (2 R.S. 660, § 3, *sub.* 2.)" (Emphasis in original.)

In *People v Taylor* (177 NY 237, 245, *supra*), a Court of Appeals opinion not addressed by the dissent, the court, citing *Shorter (supra)*, stressed the inherent subjective nature of the defense in relation to the subjective belief of the defendant: "The homicide would be justifiable, whether *appearances to her* proved to be true or false; if they were such as to furnish *reasonable grounds for her entertaining an apprehension* of personal injury [citing *Shorter v People, supra]"* (emphasis added).

Similarly, in *People v Rodawald* (177 NY 408, 423-424), the court considered defendant's honest and good-faith belief that his life was in danger in terms of the defense of self-defense: "The character of the deceased with reference to violence, when known to the accused, enables him to judge of the danger and aids the jury *in deciding whether he acted in good faith and upon the honest belief that his life was in peril*. It shows the state of his mind as to the necessity of defending himself. It bears upon the question whether, in the language of the Penal Code, 'there is reasonable ground to apprehend a design on the part of the person slain * * * to do some great

personal injury to the slayer * * * and there is imminent danger of such design being accomplished.' (§ 205.) * * * Evidence of general reputation for violence, however, is received not to show the state of mind of the deceased, but of the accused; not to show who was in fact the aggressor, but *whether the defendant had reasonable ground to believe that he was in danger of great personal injury.* Hence, it is obvious that whatever the reputation of the deceased for violence may be, it can have no bearing on what the defendant apprehended, unless he knew it. If he knew that the deceased was reputed to be violent, it might raise in his mind a fear of danger, but not otherwise" (emphasis added).

*People v Lumsden* (201 NY 264, *supra)*, which the dissent concludes explicitly approved an objective test and rejected a subjective standard, did not expressly so hold. In that case, the Court of Appeals found error in that the trial court had instructed the jury to determine whether defendant acted in self-defense, *based solely upon his belief* that the decedent was armed and that he was in great danger of attack, without considering whether there was "reasonable ground" for his belief, which was an express requirement of the former statute. Thus, Judge Hiscock, writing for the Court of Appeals, observed:

"In the first place *the only basis* which the jury were required to find as a justification for the action of the deceased in attacking appellant *was his simple 'belief' that the latter was armed and that he was in great danger.* There was no suggestion of any qualification that his belief must have rested upon some reasonable ground, but as charged it was a sufficient basis for the action of the deceased *even though a creation of mere fear or fancy or remote hearsay information or a delusion pure and simple and not rationally supported by any action or conduct of the appellant.* Of course a belief so developed or acquired would not satisfy the requirements of a justification for the conduct of the deceased.

"In the second place the jury in effect were told that if the deceased was possessed of such belief, arising no matter how, he was justified in seeking to protect himself and to disarm the appellant, no limitation being placed on the force which might be used for that purpose. Again it is obvious that this is not the correct rule, but that even if deceased was protected by a justified and reasonable belief that appellant was armed and liable to attack and injure him, he was limited to the use of such force as might be reasonably necessary, and could not

indulge in wanton violence for alleged purposes of protection and disarmament" *(supra,* at pp 268-269; emphasis added).

Thus, the holding in *People v Lumsden (supra)* rejected "simple 'belief' " as the sole basis for justification. The decision has no bearing on the issue in our case, pertaining to the prosecutor's use of the hypothetical reasonable man as the standard to evaluate the reasonableness of defendant's belief and actions. Similarly inapposite is *People v Tomlins* (213 NY 240) which involved an assault in a dwelling, where the Court of Appeals relying upon ancient law which always recognized that a man assailed in his own dwelling is not bound to retreat and may stand his ground *(supra,* at p 243). The present justification statute continues the same rule where the defendant is not the initial aggressor (Penal Law § 35.15 [2] [a] [i]).

## VI

To the extent the early New York cases set forth an objective standard, this flows directly from the express language of the prior statute, which, contrary to the position of the dissent, was significantly changed in language and substance by the revised Penal Law in 1965. Plainly, the view that the Legislature made no change when it repealed the former penal sections and enacted Penal Law § 35.15 is erroneous and unwarranted. The current statute now includes, in regard to the use of both physical force and deadly physical force, the clear and unmistakably subjective words "he reasonably believes".

This change in language is critical and must be viewed in light of the subjective standard in the Model Penal Code, adopted by the American Law Institute in 1962, which expressly affords a defense of justification to a defendant who honestly but unreasonably believes that he is acting in self-defense (Model Penal Code § 3.04). The inclusion in the Model Penal Code of a purely subjective test, without considering whether defendant's belief and action were those of a reasonable man, does not detract from the subjective nature of the standard contained in Penal Law § 35.15. Our current statute similarly provides for a subjective standard keyed to the state of mind of the defendant, obligating the jury to determine whether "this defendant *himself, subjectively,* had reason to believe—not what some other person might reasonably believe * * * that the victim was about to use offensive deadly physi-

cal force against him, and that defensive deadly physical force was necessary to defend himself" (1 CJI [NY] 35.15 [2] [a] p 875).

In contrast to the statutory language prior to 1965, the current Penal Law § 35.15 provides in part:

"1. A person may, subject to the provisions of subdivision two, use physical force upon another person when and to the extent *he reasonably believes* such to be necessary to defend himself or a third person from what *he reasonably believes* to be the use or imminent use of unlawful physical force by such other person * * *

"2. A person may not use deadly physical force upon another person under circumstances specified in subdivision one unless:

"(a) *He reasonably believes* that such other person is using or about to use deadly physical force. Even in such case, however, the actor may not use deadly physical force if he knows that he can with complete safety as to himself and others avoid the necessity of so doing by retreating * * * or

"(b) *He reasonably believes* that such other person is committing or attempting to commit a * * * robbery" (emphasis added).

The conclusion by the dissent that the current statute provides the same standard as in the previous statutes overlooks the significant language changes in Penal Law § 35.15. The legislative intent is obvious; it intended a substantive change when, in 1965, it replaced the former objective references—"not more than sufficient" (Penal Law § 246) and "reasonable ground to apprehend" (Penal Law § 1055)—with the expressly subjective words, repeated several times in the statute—"[h]e reasonably believes", as the operative test for self-defense. In our view, the Legislature explicitly adopted an entirely different test—a subjective standard—which was further subject to the test of reasonableness. While Justice Asch suggests that the Legislature inserted "reasonably" into the statute to evince a legislative design to reject the Model Penal Code's subjective approach, this could have been accomplished explicitly and ignores the fact that reasonableness as one criterion of justification was always an element of New York's justification defense. Rather, the purpose was clearly to conform to the subjective approach in the Model Penal Code.

In measuring reasonableness, it is inappropriate to refer to the fictitious, reasonable man in assessing either the defen-

dant's belief or his reaction. Concededly, defendant's belief must be reasonably formed and his reaction must also be reasonable. This is embodied in the statutory subjective standard—*reasonable to him.* Our present statute establishes as the controlling standard, reasonableness to the defendant, vis-à-vis his belief and reaction—subjectively judged in relation to him—not to the ordinary prudent person. As noted, although a Grand Jury instruction concededly requires less precision than a charge to a petit jury, this does not authorize erroneous or misleading instructions. The Grand Jury was entitled to receive proper and sufficient instructions on the applicable law. Consistent with our prior holdings, we conclude that the use of the reasonable prudent man standard was error.

The subjective nature of the justification defense is also fortified by *People v Miller* (39 NY2d 543). Although the decision in *Miller* dealt with the admissibility of evidence of prior acts of violence of the decedent of which the defendant had knowledge *(see also, People v Rodawald, supra),* the Court of Appeals clearly referred to the necessity of examining the defendant's own state of mind:

"However, the crucial fact at issue, where a claim of justification is presented, is not the character of the victim, *but, rather, the state of mind of the defendant* * * *

"Yet, a basic sense of fairness mandates that the defendant be permitted to substantiate his claim that the victim committed specific violent acts in the past because it enlightens the jury on the *state of the defendant's mind at the time of the difficulty,* and thereby enables them to decide *whether he acted rationally under the circumstances" (supra,* at pp 551-552; emphasis added).

*People v Collice* (41 NY2d 906) does not lead to a different result and, contrary to the suggestion by the dissent, does not authorize the substitution of the mind of the ordinary reasonable person. In *Collice,* the trial court did not instruct the jury as to the defense of justification and all the Court of Appeals held (p 907) was that "[o]n no view of the evidence" had the evidentiary predicate for a justification defense been established—a result with no significance here.

## VII

Further support for the subjective approach may be derived from an analysis of the language of the statute as to the legislative standard for justification ("he reasonably believes"

[Penal Law § 35.15]), in comparison with the language employed in the defense of duress. Penal Law § 40.00 (1), in regard to the defense of duress, explicitly adopts a reasonable man standard—"force or threatened force a person of reasonable firmness in his situation would have been unable to resist."

Had the Legislature intended a similar standard for the defense of justification, it would have expressly done so by incorporating in Penal Law § 35.15 reference to the "person of reasonable firmness" used in Penal Law § 40.00 (1) for the defense of duress. The Legislature, however, did not elect to do so. Clearly, the omission and substitution are significant and evince a legislative intention that justification be determined subjectively—reasonable to him—from the position and threatening situation in which the defendant found himself, considering, in terms of reasonableness, his background, physical and mental condition, knowledge and prior experiences—not that of the reasonable man. The Grand Jury instruction here failed to conform to that standard, a fatal omission.

While the dissent implies that it would be anomalous to adopt a standard as to justification different from the defense of duress, the distinction results directly from the statutory language and from the nature of the defense. Self-defense centers upon the subjective state of mind of the defendant, the critical consideration in criminal culpability.

Accordingly, the order, Supreme Court, New York County (Stephen G. Crane, J.), entered January 21, 1986, which dismissed nine counts of the consolidated indictment No. 1914-476/85, should be affirmed to the extent appealed from for the reasons stated in the opinion by Justice Crane.

KUPFERMAN, J. P. (concurring). The various well-considered opinions in this matter in this court and at Trial Term demonstrate that reasonable people may differ.

While the justification defense is subjective, there must still be a reasonable response by the subject, but if there is any doubt, the mythical reasonable person's approach cannot substitute for the reality of the subject's thinking.

In a matter where nuance is so important, I must come down on the side of an interpretation which recognizes the individual's own background and learning. The instruction to the Grand Jury was lacking in this regard, and so I would affirm.

ASCH, J. (dissenting). The only question before us is the

purely legal one of whether Justice Crane properly dismissed various counts of the indictment, rather than whether the defendant is guilty of any crime. The latter question must be decided by a jury trial.

In the order appealed herein, the Supreme Court dismissed nine counts of the indictment finding that the prosecutor's justification charge had impaired the integrity of the Grand Jury proceeding. The court held that the justification statute permitted the Grand Jury to consider only the defendant's *subjective* state of mind in evaluating the *reasonableness* of his conduct. Further, based upon a newspaper account of an interview of Darryl Cabey at St. Vincent's Hospital and an account by Police Officer Peter Smith of a statement made by Troy Canty immediately after the shootings, the court ruled that it appeared that both Canty and Ramseur had lied to the Grand Jury, and that this postindictment assessment required dismissal of the counts of the indictment affected by their testimony. The majority of this court would affirm these rulings of Criminal Term. I disagree and would reverse the order and reinstate the dismissed counts of the indictment.

It must be emphasized that what we are concerned with is the legal validity of the indictment, that the actual events and resolution of the facts as they took place on the subway on December 22, 1984, must await the actual trial. The District Attorney furnished a detailed and lengthy statement to the Grand Jury explaining the law. He closely followed the language of the statute, explaining that one could invoke deadly force if he "reasonably believed" that he was faced with deadly physical force and that it was necessary to use this force to repulse a threatened attack, or if he "reasonably believed" that he was about to be held up and that such deadly force was required to frustrate the threatened crime. Thereafter, a grand juror asked for an amplification of the term "reasonably" and the prosecutor gave the following answer:

"MR. WAPLES: Okay. I will reemphasize three elements of the defense of justification.

"The first element is that he must in fact believe in his own mind that he was in a situation [in] which he feared that deadly physical force was about to be applied against him.

"The second element is that his response, assuming that he did actually so believe his response, was his response reasonable under the circumstances and in determining whether it

was reasonable under the circumstances you should consider whether the defendant's conduct was that of a reasonable man in the defendant's situation.

"So, there's both a subjective and objective element to this. First of all, you have to determine whether the defendant, in his own mind, believed he was in the kind of peril that permitted him to use deadly physical force. You must also then determine whether his response was reasonable under the circumstances, whether that was the action—the response was the action that he—that [of] a reasonable man who found himself in the defendant's situation and if it was unreasonably excessive or—or otherwise unjustifiable it—then the defense would not be made out and the third element is the question of retreat."

The Supreme Court held, and the majority of this court agrees, that the District Attorney erred seriously in his additional explanation, in that the defendant's conduct should have been judged by a strictly subjective standard, focusing only on the state of mind of the accused rather than what a "reasonable" person might have done under the same circumstances.

I agree with what is the view of my colleagues—that the personal belief of a defendant is critical in deciding whether he was legally justified in using deadly force to protect himself. After this initial agreement with them, I must part company. They would apply a purely subjective test, considering only the personal belief of the defendant. It follows that they would reject a standard which would take into account whether the defendant's actions were based on neurotic fears or a distortion of the situation with which he was confronted, although such perception was not reasonable under the circumstances presented.

Logic, public policy and the law mandate a two-pronged inquiry. First it is clear that if a defendant is not afraid that he is threatened by deadly physical force or about to be robbed, then he has no legal defense of justification. If he did have such a subjective apprehension, then the second inquiry which the statute imposes is whether he "reasonably" believed that he was about to be robbed and that deadly force was necessary to prevent the crime. In short, what is called for is a two-step test—subjective belief on the part of the defendant that he is threatened and then, this belief is measured by what a reasonable person would believe in the defendant's situation.

Since 1829, New York's penal statutes have required a reasonable belief that one's life is in imminent peril before one could use deadly physical force in self-defense. Thus, the Revised Statutes of 1829 justified homicide "[w]hen committed in the lawful defense of such person * * * when there shall be a reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished" (part IV, ch I, tit 2, art 1, § 3 [2]).

Twenty years later, in *Shorter v People* (2 NY 193, 197 [1849]), the Court of Appeals held the "reasonable ground" of the 1829 statute to be the same as the belief of "any reasonable man".

Upon the revision of the Penal Law in 1881, the language of the 1829 statute was continued in Penal Code of 1881 § 205. By its continuance of the earlier language, the Legislature obviously ratified the Court of Appeals interpretation of the 1829 statute requiring an objective standard of a "reasonable man". *(See, Lucenti v Cayuga Apts.,* 48 NY2d 530, 541.) The words of section 205 were subsequently accepted, *in haec verba,* into Penal Law of 1909 § 1055.

In *People v Lumsden* (201 NY 264 [1911]), the Court of Appeals, construing this language, approved the following instruction, again requiring the objective standard of a "reasonable man": " 'Under the provisions of the [justification] statute, in case a person makes an assault or attack upon another *under such circumstances as would lead a reasonable man* to believe that he is about to kill or to do great bodily injury, and there is imminent danger of his doing so, then the person attacked has a right to kill and if under such circumstances he did kill it would be justifiable in law' " *(supra,* at p 268; emphasis added).

In *People v Tomlins* (213 NY 240, 244 [1914]), Judge Cardozo once more enunciated the reasonable man standard: "We think that if the situation justified the defendant *as a reasonable man in believing that he was about to be murderously attacked,* he had the right to stand his ground." (Emphasis added.)

In *People v Ligouri* (284 NY 309, 316 [1940]), the Court of Appeals was unequivocal, using the following language: "If the circumstances justified the belief on his part that he is in danger of inevitable and irreparable injury, although it should turn out he was mistaken, *an ordinarily prudent man under*

*the same circumstances would be justified in doing what he did,* if he thinks he is in danger of death * * * but he could not do more than necessary, *more than what an ordinarily prudent man under the same circumstances would be justified in doing."* (Emphasis added; *see also, People v Cherry,* 307 NY 308, 310, 317 [1954].)

In 1965, the Penal Law was again revised. Present Penal Law § 35.15, however, continues the requirement of an objective standard by authorizing a person to use deadly physical force only "when and to the extent he reasonably believes such to be necessary to defend himself" and when "[h]e reasonably believes that such other person is using or about to use deadly physical force", or when he "reasonably believes that such other person is committing or attempting to commit a * * * robbery". Thus, the reasonable objective standard set forth in prior statute and case law was approved once more by the State Legislature. *(Lucenti v Cayuga Apts., supra,* at p 541.)

The Model Penal Code, adopted by the American Law Institute, propounded a purely subjective definition for the defense of justification. It rejected any requirement for a test of reasonableness. By doing so, it sanctioned the resort to deadly force when the actor only *"believes* that such force is necessary to protect himself against death or serious bodily injury." (Model Penal Code § 3.04 [2] [a] [ii] [C]; emphasis added; *see also,* Explanatory Note at 32, Comment at 35-37.)

The New York State Legislature rejected such a purely subjective approach. Clearly with the intent to conform the current statute to the previous law, it inserted the term "reasonably" into section 35.15, obviously repudiating the subjective standard of the justification defense which the Model Penal Code uses. It is extremely difficult for me to believe that the revisers of 1965 would deliberately engraft the word "reasonably" on to the definition of justification without intending to alter the purely subjective test of the Model Penal Code.

For the last 20 years, virtually every jurisdiction which has considered its code of criminal law has turned down the purely subjective justification standard as advanced by the Model Penal Code. Instead, most of the States have accepted the reasonable person test as the basis for the defense of justification. *(See,* Note, *Justification: The Impact of the Model Penal Code on Statutory Reform,* 75 Colum L Rev 914, 919-920

[1975]; *see also,* Singer, *The Goetz Case Revives Issue of Self-Defense Standards,* NYLJ, Feb. 18, 1986, p 1, cols 3, 4.)

After the 1965 revision, the Court of Appeals, in *People v Collice* (41 NY2d 906 [1977]), ratifying its interpretation of over a century and a half, wrote that: "Even if defendant had actually believed that he had been threatened with the imminent use of deadly physical force, and there is no evidence that he had so believed, *his reactions were not those of a reasonable man acting in self-defense* (Penal Law, § 35.15) * * * Hence, defendant's conduct could not be reasonably perceived to have been useful in evading danger, let alone 'necessary to defend himself' " *(supra,* at p 907; emphasis added).

Even in this, its latest case on the subject, the Court of Appeals, interpreting Penal Law § 35.15, has continued to construe the language "reasonable man acting in self-defense" the same as "reasonably", the critical word in the justification statute. *(Accord, People v Comfort,* 113 AD2d 420 [4th Dept 1985].)

Penal Law § 40.00 (1) provides: "In any prosecution for an offense, it is an affirmative defense that the defendant engaged in the proscribed conduct because he was coerced to do so by the use or threatened imminent use of unlawful physical force upon him or a third person, *which force or threatened force a person of reasonable firmness in his situation would have been unable to resist"* (emphasis added).

Criminal Term was influenced by this duress statute, which expressly defines reasonableness in objective terms, while at the same time the justification statute simply alludes to reasonable belief. It is not difficult to explain this apparent incongruity. The source of the duress statute is the Model Penal Code, which had a test that was virtually the same. *(See,* Model Penal Code § 2.09.) To the contrary, as discussed before, the Model Penal Code's justification defense enunciated a totally subjective test. It did not contain any mandate for reasonableness. The New York legislative revision of the Penal Code, however, expressly turned down the purely subjective test when it incorporated the word "reasonably" into section 35.15. By so doing, it continued in the criminal law the principle that had been the statutory law since 1829.

In applying section 35.15's "reasonable" person filter to the purely subjective belief of the actor, the trier of fact is not foreclosed from considering the specific circumstances and the

background and knowledge of the particular defendant. *(See, People v Hamel,* 96 AD2d 644, 645 [3d ed 1983]; Prosser and Keeton, Torts § 32, at 175-185 [5th ed].)

Indeed, in the very instruction before us, the Grand Jury was twice told to examine the reasonableness of defendant's conduct by reference to a "reasonable man in the defendant's situation". Although a trial court would no doubt give an instruction with much greater particularity, "a Grand Jury need not be instructed with the same degree of precision that is required when a petit jury is instructed on the law". *(People v Calbud, Inc.,* 49 NY2d 389, 394 [1980].)

*People v Miller* (39 NY2d 543 [1976]) provides no support for the majority view herein. Although the Court of Appeals noted that a defendant's "state of mind" was "critical to a claim of justification" *(supra,* at p 548), that case cannot be extended to support the view that the defendant's subjective state of mind is the only basis upon which all justification claims rest.

*People v Santiago* (110 AD2d 569 [1985]), the only First Department case relied upon by Criminal Term, is subject to serious doubt. This court's opinion does not discuss the relevant Court of Appeals decisions in *Collice, Tomlins, Lumsden* or *Ligouri (supra).* It thus seems likely that the *Santiago* opinion, which was rendered almost a month after the Grand Jury charge in this case, is fatally flawed.

Thus, Justice Sandler, in *People v Montanez* (— AD2d —), although joining in the result, concurred separately and stated the law to be essentially as expressed in this dissent because of his expressed "doubts as to the correctness of the principles set forth in the memorandum opinion in *Santiago,* and here reaffirmed" and because he believed "the question of sufficient importance to merit a more detailed judicial analysis than it has so far received" *(supra,* p —).

It seems significant, as well, that Justice Sandler, in concurring, stated also *(supra,* p —): "Notwithstanding that which I have said in regard to the instruction, I am comfortable with the result that has been reached in this case. This is one of those unusual cases which left me with very strong doubts as to whether the jury's verdict was in fact justified by the evidence."

The same appears true of *People v Gonzalez* (80 AD2d 543 [1st Dept 1981]), where this court's decision did not reflect any awareness of the many contrary precedents of the Court of Appeals.

The Second Department decisions have also failed to distinguish, or even discuss, the many contrary Court of Appeals precedents, and therefore the correctness of those rulings is also highly suspect. Moreover, these First and Second Department cases deal with charges given by the trial court and, as noted, there is no need for the same precision in charging a Grand Jury. *(See, People v Calbud, Inc., 49 NY2d, at p 394.)*

Criminal Term also ruled that out-of-court statements by two of the youths shot by the defendant, which only became known to the prosecutor and defense counsel eight months after the second indictment, constituted exculpatory evidence necessitating dismissal of nine counts of that indictment.

However, "[t]he Grand Jury is not, of course, charged with the ultimate responsibility of determining the guilt or innocence of the accused". *(People v Calbud, Inc., supra, at p 394.)*

The limited role of the Grand Jury is to determine whether there is reasonable cause to believe that the accused has committed a crime for which he should stand trial. *(People v Valles, 62 NY2d 36, 38 [1984].)*

When potential exculpatory evidence comes to the attention of the District Attorney only after an indictment, there is no need to re-present the case to the Grand Jury. *(People v Friedman, 97 AD2d 738, 739 [1st Dept 1983].)*

The second Grand Jury heard nearly seven full days of testimony. This included some evidence which impeached the testimony of James Ramseur and Troy Canty, two of the wounded youths. That Grand Jury nevertheless found reasonable cause to indict the defendant. The additional information, which is yet legally unverified, was made available to the defendant by the prosecutor. The defendant, of course, can use this information, if he so chooses, at his trial. Likewise, there was actual impeachment of Canty before the Grand Jury in the testimony of Detective Penelton, who interviewed Canty shortly after the shooting.

In *People v Pelchat* (62 NY2d 97 [1984]), the Court of Appeals held that a prosecutor, upon learning that the only evidence supporting an indictment was mistaken, should have obtained a superseding indictment or sought permission to re-present the case. Here, however, there was no admission that any Grand Jury testimony was false or mistaken. Criminal Term inferred such falsity from a prior inconsistent statement of one Grand Jury witness and a newspaper report appearing

eight months after the indictment based upon an interview with a victim suffering from grave neurological injury.

The prosecutor here had no knowledge of this information at the time of the presentment before the Grand Jury. Therefore, the integrity of that proceeding was not compromised.

Most significantly, in *Pelchat (supra)*, there was no other incriminating evidence before the Grand Jury. *(See,* 62 NY2d, at pp 99, 107.)* Here, there was sufficient evidence, apart from the testimony of Ramseur and Canty, tending to show a lack of justification on the part of defendant in his act of shooting four youths. Indeed, Criminal Term's decision expressly acknowledged the legal sufficiency of this other evidence. Moreover, the defendant made statements which themselves were damaging, seemingly inconsistent with his defense of justification. Since the Grand Jury could, therefore, have disregarded the testimony of Canty and Ramseur and still voted the indictment, Criminal Term was not justified in holding that the integrity of the proceeding was fatally impaired by the postindictment legally unverified information about Cabey and Canty.

There are few cases in which both the legislative history and the principles enunciated by the Court of Appeals have presented such an unanimity of construction with respect to the meaning of the statute as they have with respect to the reasonable person standard for justification.

The historic reason for this consistency is compelling. The subjective test which the majority seeks to make the law of this State would serve to give legal excuse to any hot-tempered individual, fearful neurotic, or simply excessively self-righteous person who rashly uses deadly force. If the subjective standard is adopted by us, it may provide any citizen, whether sensible or not, with a justification to shoot or kill, although the circumstances do not reasonably warrant such drastic action. We have come a long way from the law of the jungle, and Penal Law § 35.15 and the considered decisions of the Court of Appeals were promulgated to preclude this sort of dangerous and indiscriminate deadly force.

WALLACH, J. (concurring in dissent). I concur in the dissent of my colleague, Justice Asch. But because it would be no light thing to depart from our recent decisions in *People v Santiago* (110 AD2d 569) and *People v Montanez* (— AD2d —) and, to a somewhat lesser extent, from the holdings of the Second Department decisions in *People v Powell* (112 AD2d

450), *People v Swinson* (111 AD2d 275, 277 [Titone, J., concurring in part]), *People v Long* (104 AD2d 902), *People v Wagman* (99 AD2d 519), and *People v Desmond* (93 AD2d 822) I am constrained to add a few observations of my own.

As I see it, the central issue determinative of the outcome here turns upon the construction of the words "he reasonably believes" used four times in Penal Law § 35.15 as applied to the conduct of one who seeks to justify the use of deadly force upon another, either to defend his own person or to resist robbery. The error in the *Desmond-Santiago* line of cases cited *supra* (understandably relied upon by Criminal Term), was, by focusing exclusively upon the subjective state of mind of the actor, to rewrite the statute and to substitute the term "genuinely" for "reasonably". No one, not even defendant himself, argues that absent a state of mind that he genuinely apprehended the use of unlawful deadly force against him, the defense of justification would be available to him. Surely, however, something more is required than simply his own deep-dyed convictions, however honestly held, that he was imminently threatened with robbery or deadly peril. To hold otherwise, it seems to me, is to fail to give adequate force and effect to the element of reasonableness so clearly inserted in the statute.

The history of the Court of Appeals decisions which have considered the necessary elements of the defense of justification, beginning with *Shorter v People* (2 NY 193) in 1849 and terminating with *People v Collice* (41 NY2d 906) in 1977, lends considerable support for the view that a jury, in considering a claim of self-defense, must be instructed that some objective measure or community standard must be added to the actor's personal apprehensions before his use of deadly force is justified. Beyond that, the broad contours of the Penal Law itself demonstrate the validity of that proposition. When recourse is had to other sections of the Penal Law, it becomes manifest that this legislation draws articulate distinctions, in appropriate situations, for the application of a subjective versus an objective test to the particular conduct under review.

At one end of the spectrum on the objective side may be found the affirmative defense of duress (Penal Law § 40.00 [1]), providing that criminal conduct may be excused if the defendant is coerced into the unlawful activity by force exercised upon him or a third person "which force or threatened force a person of reasonable firmness in his situation would have been unable to resist." At the other end of the spectrum the

Legislature has provided for the application of a purely subjective standard in defining when there is a duty to retreat (Penal Law § 35.15 [2] [a]), i.e., "the actor may not use deadly physical force if he *knows* that he can with complete safety as to himself and others avoid the necessity of so doing by retreating" (emphasis added). In between these perimeters, the statute has fashioned the hybrid partial affirmative defense of "extreme emotional disturbance" which will operate to reduce the crime of murder in the second degree to manslaughter in the first degree, where it can be shown that defendant's distressed mental state was one "for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." (Penal Law § 125.25 [1] [a].)

At least one authority has, in a reprise of Justice Cardozo's Law and Literature (at 100-101), criticized this statute as a "mystifying cloud of words" (Byrn, *Homicide Under the Proposed New York Penal Law,* 33 Fordham L Rev 173, 179; *see, People v Shelton,* 88 Misc 2d 136, 144). Such difficulty notwithstanding, in *People v Casassa* (49 NY2d 668), the Court of Appeals (at p 676) clarified the test to be applied by the trier of fact as a hybrid one: (1) the extreme emotional disturbance is subjective; e.g., " 'it may be that a significant mental trauma has affected a defendant's mind for a substantial period of time, simmering in the unknowing subconscious and then inexplicably coming to the fore' " (citing *People v Patterson,* 39 NY2d 288, 303), but, " 'The ultimate test, however, is objective; there must be "reasonable" explanation or excuse for the actor's disturbance' " (at p 679, quoting Comment to the Model Penal Code § 201.3 [Tent Draft No. 9 (1959)]).

Undoubtedly, *Casassa (supra)* has laid to rest the argument that no jury can be realistically asked to sift the actions of a defendant in a homicide case utilizing on the one hand the totally subjective standard of extreme emotional disturbance and, having been satisfied as to that, then to assess, in "hybrid" fashion, the objective reasonableness of defendant's conduct, giving adequate consideration to the manner in which the total situation impacted upon a psyche imbalanced by that same extreme emotional disturbance. And most pertinent to the issue before us now, the suggestion has already been judicially advanced that a similar hybrid test should be used in assessing the justification defense set up in Penal Law § 35.15 *(see,* concurring opn of Sandler, J. P., in *People v*

*Montanez*, — AD2d —). Indeed, in the self-defense case, the jury's task in applying the "hybrid" test to the second branch of the inquiry would appear to be somewhat simpler: they must assess the impact of the total situation not upon a mind encumbered with extreme emotional disturbance, but rather upon a rational mentality affected merely by individual history and experience.* And, surely, if the community has an interest in requiring the satisfaction of an objective standard of reasonableness in permitting the reduction of criminal liability from murder to manslaughter, it has a more compelling interest in insisting upon a similar objective standard of reasonableness before ratifying a total exoneration of all liability in the context of a claim of self-defense. And it is just that community interest which finds expression in the words of the justification statute when it refers not simply to what defendant "believes", but rather to that which "he reasonably believes".

It is in light of the foregoing considerations that we must examine the instructions to the Grand Jury furnished by the presenting Assistant District Attorney set forth *in extenso* by the majority and by Justice Asch. In defining the objectivity test, Mr. Waples twice directed the grand jurors to consider "whether the defendant's conduct was that of a reasonable man *in the defendant's situation"* (emphasis added).

In all likelihood, this truncated caveat fell far short of what will be demanded of the Judge at trial, who in instructing the petit jury may well, depending upon the evidence adduced, be required to expand upon what "defendant's situation" really was, particularly with reference to prior traumatic episodes of his life during which he was robbed and injured, as well as his close relationship with others who fell victim to savage street crime encounters. Such evidence, if offered, will of course be germane not only to defendant's perception of his peril, but also to what a person with defendant's background and experience would reasonably perceive and do. *(See, People v Hamel,*

---

* It should be emphasized that the use of this "hybrid" approach in no way resurrects the "reasonable person" test familiar in the Law of Torts *(see,* Prosser and Keeton § 32 [5th ed]) and in so doing avoids the objection of one commentator that use of the objective standard in isolation is unacceptable since it fails to distinguish between the culpable versus the negligent killer (Singer, *The Goetz Case Revives Issue of Self-Defense Standards,* NYLJ, Feb. 18, 1986, p 1, cols 3, 4). Thus, there is no foundation for the anxieties expressed by my colleague, Justice Kassal, that a reversal here will import the negligence standard of the ordinary prudent man into the inquiry.

96 AD2d 644.) However, the Assistant's directions were a fair if terse summary of the law of justification and in any event are not to be measured by the standard required to be applied at trial. In *People v Calbud, Inc.* (49 NY2d 389), an obscenity prosecution, the District Attorney failed to instruct the grand jurors upon the appropriate "statewide" standard in determining whether the offending materials were in fact obscene. Despite this omission even to mention the standard by which the Grand Jury was to assess the evidence at the core of the prosecutor's case, the Court of Appeals, reversing both lower courts, reinstated the indictment with the following observation (at pp 394-395): "We deem it sufficient if the District Attorney provides the Grand Jury with enough information to enable it intelligently to decide whether a crime has been committed and to determine whether there exists legally sufficient evidence to establish the material elements of the crime." The court supplemented this observation with a footnote that "[i]n the ordinary case, this standard may be met by reading to the Grand Jury from the appropriate sections of the Penal Law" *(supra,* p 395, n 1). Defendant concedes, as he must, that legally sufficient evidence to sustain the indictment was placed before this second Grand Jury, and it also appears that this body was provided in the Assistant's main charge with all the necessary statutory elements pertaining to the nine counts of the indictment which Criminal Term dismissed.

It is unnecessary to add further to the reasons set forth by Justice Asch for rejecting defendant's contentions that a third Grand Jury must be convened simply for the purpose of evaluating allegedly impeaching evidence with respect to the witnesses Ramseur and Canty. The substance of most of this impeachment was before the Grand Jury; indeed, the Assistant District Attorney was rather scrupulous in calling the grand jurors' attention to the fact that the witness Ramseur had been charged with reporting to the police a lurid and false scenario of his imaginary kidnapping and that this falsehood should be considered in evaluating Ramseur's testimony.

For the foregoing reasons, the order of Criminal Term dismissing the indictment with leave to submit to a third Grand Jury should be reversed and the indictment reinstated for further proceedings in accordance with law.

CARRO, J., concurs with KASSAL, J.; KUPFERMAN, J. P., concurs in a separate opinion; ASCH, J., dissents in an opinion;

WALLACH, J., in a separate dissenting opinion, concurs with the dissenting opinion by ASCH, J.

Order, Supreme Court, New York County, entered on January 21, 1986, affirmed to the extent appealed from for the reasons stated in the opinion by Justice Crane.